UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| ARTHUR GALLAGHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CLAYTON, | ) | No.: |
| | ) | |
| MAYOR LINDA GOLDSTEIN, | ) | |
| | ) | |
| CITY MANAGER CRAIG OWENS, | ) | |
| | ) | |
| PARKS DIRECTOR PATTY DeFORREST, | ) | |
| | ) | |
| POLICE CHIEF THOMAS J. BYRNE, | ) | |
| | ) | |
| *each in his or her official capacity only* | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY RELIEF AND/OR
PRELIMINARY AND PERMANENT INJUNCTIONS, AND DAMAGES
CIVIL RIGHTS - 42 U.S.C. 1983 AND 1988, AND STATE LAW CLAIM
CHALLENGING CITY OF CLAYTON'S BAN ON OUTDOOR SMOKING IN PARKS**

Comes now Plaintiff Arthur Gallagher, by counsel W. Bevis Schock and Hugh A.

Eastwood, and states for his complaint challenging the City of Clayton, Missouri's Ban on

Outdoor Smoking in Parks and Other Venues, brought under (a) Fed.R.Civ.P. 57, Declaratory

Relief, and/or Fed.R.Civ.P. 65 Preliminary and Permanent Injunctions and Damages, (b) the

Civil Rights, 42 U.S.C. 1983 and 1988, and (c) state law:

**OVERTURE**
**From *Duck Soup***
**In Which Groucho Marx Becomes Dictator of the Mythical State of Freedonia**

**Mrs. Teasdale**
If it's not asking too much --
For our information
Just for illustration
*(Begins Singing)*
Tell us how you intend to run the nation.

**Groucho** *(Singing)*
These are the laws of my administration:
No one's allowed to smoke
Or tell a dirty joke --
And whistling is forbidden...

**Ensemble** *(Singing)*
We're not allowed to tell a dirty joke
HAIL, HAIL, FREEDONIA

**Groucho** *(Singing)*
If chewing gum is chewed,
The chewer is pursued
And in the hoosegow hidden...

**Ensemble** *(Singing)*
If we should choose to chew, we'll be pursued -

**Groucho** *(Singing)*
If any form of pleasure is exhibited
Report to me and it will be prohibited.
I'll put my foot down;
So shall it be -
This is the land of the free.

2

## SUMMARY, NOT PART OF COMPLAINT

The City of Clayton ("the City") has passed an Ordinance which criminalizes outdoor smoking in its city parks, garages, and certain other venues.  Penalties are up to a $1,000.00 fine and 90 days in jail.

Plaintiff resides in the City and pays taxes.  He enthusiastically enjoys using the city's parks, etc., and ecstatically enjoys smoking tobacco products while doing so.

In addition to the outright ban on outdoor smoking in certain venues, the Ordinance authorizes the City Manager to ban smoking at certain events, such as outdoor festivals, on an ad hoc basis, all without standards for making his decision.

Plaintiff asserts that the Ordinance's outdoor smoking ban is unlawful under six different theories, five federal and one state.  Those theories are that the Ordinance:

1.      Denies smokers their United States Constitution Fourteenth Amendment substantive due process rights, because the health threat of secondhand smoke from outdoor tobacco use is de minimus, and hence the ban fails rational basis review,

2.      Denies smokers their United States Constitution Fourteenth Amendment substantive due process rights because smoking is part and parcel of ancient American history, traditions and customs, and thus is a fundamental right, and the Ordinance is not narrowly tailored to protect that right, and hence the ban fails strict scrutiny review,

3.      Denies smokers their United States Constitution Fourteenth Amendment right to equal protection because smokers are a quasi-suspect class due to

3

discrimination and second class categorization, and hence the ban fails

intermediate scrutiny review,

4.      Denies smokers their United States Constitution Fourteenth Amendment

substantive due process rights because, even if the Court does not concede

that smokers are a quasi-suspect class, the real purpose of the Ordinance is

to express animus toward smokers, and hence the ban fails rational basis

review,

5.      Is arbitrary and capricious because it delegates to the City Manager the

authority to ban outdoor smoking at festivals and events, but fails to

provide standards for determination of his decisions, and

6.      Denies smokers their Missouri Constitution Art I, § 2 liberty and pursuit

of happiness rights, because the Missouri Constitution includes the phrase

"pursuit of happiness" which the Federal Constitution does not, and so the

Missouri Constitution guarantees an even higher level of individual liberty

than the United States Constitution, and hence the ban fails review under

the Missouri Constitution.

Plaintiff asks this court to declare the Ordinance invalid and/or to issue preliminary and

permanent injunctions enjoining enforcement of the Ordinance.

Plaintiff makes his federal claims pursuant to 42 U.S.C. 1983.

Plaintiff seeks attorney's fees under 42 U.S.C. 1988.

Plaintiff asks the court to exercise supplemental jurisdiction over their state law claim.

_____

**PARTIES**

1.    Plaintiff  Arthur Gallagher is an individual residing in the City of Clayton, State of Missouri.

2.    Plaintiff pays real estate taxes to the city indirectly through rent paid to a landlord, and pays sales tax on retail purchases made in the City.

3.    The City of Clayton ("the City") is a properly formed municipality in St. Louis County, State of Missouri.

4.    Defendant Mayor Linda Goldstein is the Mayor of the City and Plaintiff sues her in her official capacity only.

5.    Defendant City Manager Craig Owens is the City Manager of the City and Plaintiff sues him in his official capacity only.

6.    Defendant Director Patty DeForrest is the Director of Parks and Recreation for the City, and Plaintiff sues her in her official capacity only.

7.    Defendant Chief Thomas J. Byrne is the Chief of Police for the City, and Plaintiff sues him in his official capacity only.  (For simplicity and by context, when Plaintiff refers to "the City", Plaintiff intends to include all Defendants).

**SUBJECT MATTER JURISDICTION**

8.    This action seeks declaratory relief and injunctive relief in a challenge to Ordinance No. 6118, ("the Ordinance"), Ex. 1, of the City of Clayton, State of Missouri, on federal (and state) constitutional grounds, and so presents a federal question.

9.    The Ordinance includes criminal penalties for its violation.

10.    Plaintiff suffers an injury to his legally protected liberty and privacy interests in smoking.

11.     Plaintiff suffers a risk of criminal penalties for engaging in constitutionally protected activity.

12.     There is a causal connection between Plaintiff's injuries and the Ordinance.  It is likely that a favorable decision in this case will redress Plaintiff's injuries.[1]

13.     Plaintiff seeks relief under 42 U.S.C. 1983.

14.     This court has jurisdiction through its authority to grant declaratory relief pursuant to 28 U.S.C. 2201.

15.     The court also has jurisdiction pursuant to 28 U.S.C. §1331 (federal question), and 28 U.S.C. §1343 (civil rights).

16.     Plaintiff asks the court to exercise its supplemental jurisdiction over their state law claim pursuant to 28 U.S.C. §1367.

**VENUE**

17.     The events giving rise to the claim have occurred and are occurring in the Eastern District of Missouri, in the Eastern Division.

**STANDING AND RIPENESS**

18.     Standing and ripeness tend to merge in preenforcement challenges to criminal statutes.[2]

19.     If Plaintiff smokes in violation of the Ordinance he will be subject to criminal prosecution, the threat of fines and imprisonment, legal fees, loss of time defending the ticket, and the fear and emotional harm of being subject to a criminal prosecution.

20.     Plaintiff concedes that as of this filing he is not subject to a summons, indictment, complaint or information for violation of the Ordinance.

---

[1] *Lugan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).
[2] *Ord v. District of Columbia*, 587 F.3d 1136, 1149 (D.C. Cir. 2009).

21.    The injury of enforcement of the criminal Ordinance against Plaintiff is nevertheless impending.[3]

22.    Requiring a threat of imminent prosecution to confer standing in a pre-enforcement challenge to a criminal provision ignores the injurious effect of other types of government coercion, such as harassment and intimidation.[4]

23.    Standing exists because the Plaintiff's abstention from the prohibited conduct is itself an actual injury, regardless of whether a prosecution is imminent.[5]

24.    In the alternative, Plaintiff has taxpayer standing.[6]

## COLOR OF STATE LAW

25.    At all relevant times and in all relevant ways all Defendants have acted or will act under color of state law.

26.    Particularly, Defendants have acted or will act under color of the laws, statutes, Ordinances, regulations, policies, customs and usages of the State of Missouri, and its political subdivisions.

## FACTS AND IDENTIFICATION OF CHALLENGED LANGUAGE

### Ordinance No. 6118

27.    On August 24, 2010, on a voice vote, the City's Board of Aldermen unanimously passed the Ordinance.

28.    The Mayor signed the Ordinance into law.

---

[3] *Blanchette v. Connecticut General Ins. Corporations*, 419 U.S. 102, 143 (1974).
[4] *Ord v. District of Columbia*, 587 F.3d 1136, 1149 (D.C. Cir. 2009).
[5] *Ord v. District of Columbia*, 587 F.3d 1136, 1149 (D.C. Cir. 2009).
[6] *Eastern Mo. Laborers Dist. Council v. St. Louis County,* 781 S.W.2d 43, 46 (Mo. banc 1989) (citing *Metro Auto Action v. Director of Revenue*, 707 S.W.2d 397, 400 (Mo. Banc 1986)) ("Standing requires that a party seeking relief have a legally cognizable interest in the subject matter and that he has a threatened or actual injury.")

29.     The Ordinance amended the City's previously passed smoking ordinance, No. 6081,

which prohibits smoking in enclosed places of employment and certain other indoor

public places.

30.     The Ordinance states regarding property owned by the City of Clayton, in relevant part:

> The possession of lighted or heated smoking materials in any form,
> including, but not limited to the possession of lighted or heated
> cigarettes, cigars, pipes or other tobacco products, is prohibited in
> or on any property or premises owned or leased for use by the City
> of Clayton, including buildings, grounds, parks, playgrounds,
> sports arenas and facilities, playing fields, parking lots and parking
> structures.
>
> Clayton, Missouri, Code of Ordinances, Section 215.681(A)
> (2010).

31.     This portion of the Ordinance bans smoking in outdoor City owned areas including parks,

parking lots and garages.

32.     Plaintiff only challenges and seeks to have invalidated the following words of this portion

of the Ordinance banning outdoor smoking:  "**grounds, parks, playgrounds, [] playing**

**fields, parking lots and parking structures**".

33.     The Ordinance also states, "**The City Manager may… order that the smoking**

**prohibition be applied to streets, alleys, sidewalks, and other public ways where**

**community events, fairs, festivals, neighborhood events and similar public**

**gatherings are being held during the period of such events.**"[7]  Plaintiff challenges all

of this language.  (Plaintiff will hereinafter collectively refer to the above two quoted and

bolded portions of the Ordinance as the "challenged language", or "the ban").

---

[7] Clayton, Missouri, Code of Ordinances, Section 215.681(C)(1) (2010).

8

34.     The Mayor of the City, by code section 105.101, "shall be active and vigilant in enforcing all laws and Ordinances for the government of the City", and so has a law enforcement role. [8]

35.     The Ordinance, like all city Ordinances, is subject to enforcement by the City's police force, and that organization is under the supervision and control of Defendant Chief of Police.

36.     The Ordinance's penalty provision is incorporated by reference.  The reference is to Code Section 100.110, which states that violators shall, "be fined not more than one thousand dollars ($1,000.00) or be punished by imprisonment in jail not to exceed ninety (90) days or be punished by both fine and imprisonment."[9]

37.     The Ordinance's effective date was January 1, 2011.

**Plaintiff Wishes to Use Parks and Wishes to Smoke in Parks**

38.     Plaintiff is a regular user of the City's parks, and wishes to continue to use the City's parks.

39.     Plaintiff is a regular user of lighted tobacco products, and wishes to continue to use lighted tobacco products.

40.     Plaintiff uses tobacco products in the City's parks, and wishes to continue to use lighted tobacco products in the City's parks.

**REASONABLE ATTORNEY'S FEES AND COSTS**

41.     In the course of pursuing this action Plaintiff is incurring reasonable attorney's fees and costs.

---

[8] Clayton, Missouri, Code of Ordinances, Section 105.101 (1970).
[9] Clayton, Missouri, Code of Ordinances, Art. III, § 100.110 (2010).

9

## COUNT I
## RATIONAL BASIS TEST

42.     Plaintiff asserts the challenged language violates his Fourteenth Amendment substantive

        due process rights under the United States Constitution because the ban fails the rational

        basis test.

### City Can't Stop the Smoker From Harming Himself -
### Ordinance Designed to Protect Third Parties from Second Hand Smoke

43.     On its face, given its discussion of secondhand smoke, the Ordinance is designed not to

        protect smokers from themselves, but rather non-smoking citizens from alleged danger

        from secondhand smoke.

44.     American notions of liberty are inextricably entwined with the American ideal of

        physical freedom and self-determination.  The Supreme Court has often deemed

        government incursions into the body to be repugnant to the interest protected by the Due

        Process Clause.[10]

45.     In a society of free men, men must be free to make even foolish choices.[11]

46.     The right to make foolish choices includes the right to engage in the short term pleasure

        of smoking, even though the choice is medically foolish over the smoker's long term life

        span.

47.     This Complaint shall hereafter assume that the ban on smoking is designed to serve the

        government interest in protecting persons adjacent to smokers, and not smokers

        themselves – because in a free society the state may not ban persons from engaging in

        activity like smoking, which while likely foolish, is within their rights as free citizens.

---

[10] *Cruzan v. Director, Missouri Department of Health*, 497 U.S. 261, 287-288 (1990), cited in
*Giordano v. Connecticut Valley Hospital*, 588 F.Supp.2d 306, 318-319 (D. Ct. 2008).
[11] *Video Software Dealers Ass'n. v. Schwarzenegger*, 2007 WL 2261546, 5 (N.D.Cal. 2007).

**No Actual Health Concern**

48.     Given the paucity of science on outdoor secondhand smoke, there is no true health reason for an outdoor smoking ban.

49.     In the field of toxicology "the dose makes the poison".[12]

50.     For adjacent persons outdoor smoking creates only trivial and medically irrelevant doses of the poisons in tobacco smoke.

51.     The preamble for the Ordinance states that it is enacted in order to, "… preserve and protect the health, safety and welfare of those persons frequenting public places within the City of Clayton, and that such restrictions serve the best interest of the citizens of the City…"[13]

**The Three Studies**

52.     The preamble further references three peer-reviewed scientific studies to supports its basis of protecting the citizenry from the dangers of secondhand smoke.

53.     In fact, as stated below, trace amounts of tobacco smoke have no impact on outdoor air quality ratings or human health, and the three studies do not say otherwise.

54.     The City first relies on 2006 U.S. Surgeon General's Report, *The Health Consequences of Involuntary Exposure to Tobacco's Smoke*[14].

55.     This report does not directly address smoking outdoors.  Rather, it focuses on indoor air being exchanged with outdoor air.[15]

---

[12] "That which has no effect at one level (say, vitamin A) may be medicinal at a higher level and a deadly poison at a higher level still."  Hormesis: a revolution in toxicology, risk assessment and medicine EMBO Rep. 2004 October; 5(Suppl 1): S37–S40. doi: 10.1038/sj.embor.7400222.
[13] Clayton, Missouri, Code of Ordinances, Ordinance No. 6118, 2, (2010).
[14] Clayton, Missouri, Code of Ordinances, Ordinance No. 6118, 2, (2010), p. 1.

56.     The City relies upon *Health effects of exposure to environmental tobacco smoke: the report of the California Environmental Protection Agency, Smoking and Tobacco Control Monograph 10.*[16]

57.     This report mainly focuses on indoor smoke.  It stipulates that there is, "some exposure outdoors in the vicinity of smokers,"[17] but does not include a single study that focuses strictly on outdoor smoke exposure.

58.     The City mistakenly relies upon *Environmental tobacco smoke: first listed in the Ninth Report on Carcinogens.*[18]

59.     This report does not address outdoor smoke exposure.

60.     The law requires substantial supporting evidence in the record to demonstrate that recited harms are real, not merely conjectural.[19]

61.     There is no evidence – and certainly not in the three reports cited as the basis for the Ordinance – that there is a health danger from outdoor second hand smoke.

**Pack Years**

62.     A "pack year" is defined as a smoker smoking one pack of 20 cigarettes per day for one year, that is, 7300 cigarettes.

---

[15] U.S. Surgeon General Report, *The Health Consequences of Involuntary Exposure to Tobacco's Smoke*, 85, 2006, http://www.surgeongeneral.gov/library/secondhandsmoke/report/fullreport.pdf.
[16] Clayton, Missouri, Code of Ordinances, Ordinance No. 6118, 1, (2010).
[17] National Cancer Institute, *Smoking and Tobacco Control Monograph 10*, 19, 1999, http://cancercontrol.cancer.gov/tcrb/monographs/10/.
[18] U.S. Department of Health and Human Services, *9th Report on Carcinogens*, 153, 2002, http://knovel.com/web/portal/browse/display?_EXT_KNOVEL_DISPLAY_bookid=554&VerticalID=0).
[19] *Interactive Digital v. St. Louis County*, 329 F.3d. 954, 958-959 (8th Cir.2003).

63.    Only when a smoker reaches 10 pack years, that is, 73,000 cigarettes, is there generally considered a health concern from the effect of smoking.[20] [21]

64.    A lifetime of exposure to outdoor smoke in City of Clayton parks could not cause a person in question to have exposure equal to even a single pack week, much less 10 pack years.

**Proximity and Wind Direction**

65.    Exposure outdoors is greatly dependent upon proximity to the smoker and wind direction.[22]

**Comparative Sources of Bad Air**

66.    Studies measuring outdoor air quality do not include smog from human smoking – in part because the amount of smog from smoking is so de minimus as to have no measurable impact.

67.    An odiferous smog belching garbage truck produces more air quality degradation than outdoor cigarette smoke - even if the truck is a moderate distance away from the person in question and so the truck's smog is somewhat dissipated, and the smoker is very near the person in question.

68.    The smog from the cars and trucks on I-170 and the Forest Park Parkway, which border the southwest corner  of Shaw Park in the City of Clayton, (where the ball fields are and where the children play little league), even after dissipation, is exponentially greater than any trace smog from adjacent outdoor smokers.

---

[20] Dr. Jerome Arnett, Jr., M.D., The Emperor has No Clothes:  The Truth About Second Hand Smoke.  http://www.heartland.org/custom/semod_policybot/pdf/23613.pdf
[21] See Jerry Arnett, pulmonologist, from the Heartland Institute Policy Bot web site.
[22] Neil L. Klepeis, *Real-Time Measurement of Outdoor Tobacco Smoke Particles,* Air & Waste Management Association, 57:522 (May 2007).

69.   The City of Clayton furnishes equipment for barbeques in its parks.

70.   Barbeque smoke produces fumes with the same major chemicals as cigarettes.

71.   Barbeque smoke is more concentrated than cigarette smoke.

### Real World Facts – Slippery Slope

72.   The court may take judicial notice that Outdoor smoking fumes are transitory, in that outdoor smokers are unlikely to be next to persons in question either repeatedly or for extended periods of time.

73.   If a bystander in question is downwind from an outdoor smoker in a park, parking lot or garage, the bystander has the choice to move upwind.

74.   If this greatly diminished exposure risk outdoors is deemed enough of a danger for the Ordinance to be upheld by this Court, then people smoking in their own backyards will be next for prohibition since such outdoor secondhand smoke could potentially drift from their private property onto neighboring private property, and/or onto neighboring public property such as sidewalks and streets.

### Pretext

75.   The allegation of a health risk may be (or in the alternative *is*) a pretext for the real reason for the ban - which is that members of the Board of Aldermen find smokers, smoking and second hand smoke, even outside, unpleasant.

76.   The mandates of due process are inherently flexible, and the courts must balance public and private interests.[23]

77.   Unpleasantness to an adjacent person is an insufficient interest to restrict the smoking citizen's private interest in smoking outdoors.

---

[23] *McClure v. Biesenbach*, 355 Fed.Appx. 800, 806, (5th Cir. 2009)

**Precautionary Principle**

78.    The precautionary principle, essentially calling for doing nothing which might be risky even if the action is not yet scientifically confirmed as risky, is discredited, and should not be used to support banning outdoor smoking because of remote risks to adjacent persons.[24]

**No Set of Facts Justifies Ordinance – No Legitimate Government Interest**

79.    No set of facts may be reasonably conceived to justify the Ordinance as rationally related to a legitimate state interest, particularly that of health care and/or human safety.[25]

80.    Since the Ordinance does not rationally base itself on its stated healthcare purpose, then it is not rationally related to a legitimate governmental interest, and so it violates Plaintiff's Fourteenth Amendment right to substantive due process.

81.    At its most extreme, rational basis standard of review mandates that a "… legislative choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data."[26]  For enactment, the Court need only find some "reasonably conceivable state of facts" that could provide a rational basis.[27]  Hence, the Ordinance must, "… find some footing in the realities of the subject addressed by the legislation."[28]

---

[24] Ronald Bailey, *Precautionary Tale*, REASON, April, 1999, http://reason.com/archives/ 1999/04/01/precautionary-tale.

[25] *McGowan v. Maryland*, 366 U.S. 420, 426 (1961) ("A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it").

[26] *Heller v. Doe*, 509 U.S. 312, 319 (1993) (internal quotations and citations omitted).

[27] *Heller v. Doe*, 509 U.S. 312, 320 (1993) (the Court assessed whether there was a "reasonably conceivable state of facts" when doing its analysis).

[28] *Heller v. Doe*, 509 U.S. 312, 321 (1993)

82.     The challenged language fails because the perceived danger of outdoor secondhand smoke is irrational and unreasonable and so fails even this admittedly loose test.

_____

83.     The portions of the Ordinance which ban outdoor smoking thus have no rational basis, and should be declared invalid under the Fourteenth Amendment of the United States Constitution.

## COUNT II
## SUBSTANTIVE DUE PROCESS
## BODILY INTEGRITY, LIBERTY, AND
## ANCIENT AND MODERN CULTURAL TRADITIONS

84.     Plaintiff incorporates all prior paragraphs.

85.     This count addresses the balancing between:

    a.     An outdoor smoker's freedom

        i.     To exercise bodily integrity,

        ii.     To enjoy his liberty interest to do what he wants with his life and his time[29], and

---

[29] See K.M. Kuntz, Smoke. Todtri Productions Limited, New York. 1997, p. 120, "Smoking is, if not my life, at least my hobby. I love to smoke. Smoking is fun. Smoking is cool. Smoking is, as far as I'm concerned, the entire point of being an adult – Fran Lebowitz". *Confer also* John Boehner, Speaker of the United States House of Representatives, who, on national television on Fox News Television on Sunday, January 30, 2011 was asked why he doesn't quit smoking and responded sharply: "Yes, it's a bad habit, but I choose to smoke". As far as being asked again and again about his smoking, Boehner said with a smile, "Leave me alone." *See also, Olmstead v. U.S.,* 277 U.S. 438, 478-479 (1928), Brandeis, J., dissenting, "The protection guaranteed by the amendments is much broader in scope. The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the government, the right to be let alone-the most comprehensive of rights and the right most valued by civilized men. To protect, that right, every unjustifiable intrusion by the

        iii.     To engage in ancient and modern cultural traditions, and

    b.     The government's interest in healthcare of persons adjacent to smokers.

86.    The Due Process Clause of the Fourteenth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests."[30]

87.    Fundamental rights are those that are "implicit in the concept of ordered liberty,"[31] or a, "principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."[32]

88.    A liberty interest may arise by reason of the word "liberty".[33]

    a.     Laws that abridge fundamental rights are subject to strict scrutiny, and "must be precisely tailored to further a compelling governmental interest."[34]

    b.     An infringement on liberty is forbidden unless the infringement is narrowly tailored to serve a compelling state interest.[35]

89.    Plaintiff concedes that courts are to exercise self-restraint and utmost care when asked to break new ground on new fundamental rights because guideposts for responsible decision-making are scarce and open-ended.[36]

---

government upon the privacy of the individual, whatever the means employed, must be deemed a violation of the Fourth Amendment."

[30] *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (quoting *Reno v. Flores*, 507 U.S. 292, 301-302 (1993)).

[31] *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 US 833, 951 (1992) (citing *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)).

[32] *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 US 833, 951 (1992) (citing *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934)).

[33] *Wilkinson v. Austin***,** 545 U.S. 209, 222 (2005) ("A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty").

[34] *Goetz v. Glicksmani,* 149 F.3d 1131, 1140 (10th Cir.1998) (citing *Edwards v. Valdez*, 789 F.2d 1477, 1483 (10th Cir.1986)).

[35] *Glucksberg*, 521 U.S. at 721 ( citing *Reno, supra*, at 302).

90.   No constitutional amendment is directly on-point, and so smoking is akin to personal privacy[37], procreation, marriage, family, and similar rights analyzed under substantive due process principles.[38]

91.   Smoking is a fundamental right.  (Plaintiff acknowledges that all courts which have ruled on the issue have held that smoking is not a fundamental right, but Plaintiff believes that there is a colorable argument to the contrary, (pursuant to Federal Rule 11(b)(2)[39]) in that Plaintiff reasonably believes the law can be changed.  Only two original courts[40] have found no fundamental right to smoke, and it appears that after that the courts opining on the subject have simply cited each other without re-examining the rubric).

92.   An analysis of fundamental rights in the substantive due process context involves (a) a determination of whether the fundamental right or liberty interest is deeply rooted in history and tradition, and so implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed, and (b) a careful description of the asserted fundamental liberty interest.[41]

93.   Indicators that smoking is deeply rooted in history, and in both ancient and modern traditions, include at least the following:

---

[36] *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) ("the doctrine of judicial self-restraint").

[37] *Lawrence v. Texas*, 539 U.S. 558, 562 (2003) ("And there are other spheres of our lives and existence, outside the home, where the State should not be a dominant presence".)

[38] *Glucksberg*, 521 U.S. at 720 (internal citations omitted).

[39] Federal Rule 11(b) states, "By presenting to the court a pleading… an attorney or unrepresented party certifies that to the best of the person's knowledge… formed after an inquiry reasonable under the circumstances: (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."

[40] *Grusendorf v. City of Oklahoma City*, 816 F.2d 539 (10th Cir. 1987); *also* Thiel v. Nelson, 422 F.Supp.2d 1024 (W.D.Wisc. 2006).

[41] *Glucksberg*, 521 U.S. at 720-21, *see also* Chavez v. Miller, 538 U.S. 760, 775 (2003).

a.      Native Americans smoking tobacco before contact with Europeans,[42]

b.      Europeans and Native Americans smoking peace pipes together as a symbol of (early) friendship,[43]

c.      Entrepreneurs and corporations making money in the tobacco trade,[44]

d.      Slave smoking in a search for solace,[45]

e.      Slave smoking in the pursuit of happiness despite their circumstances,[46]

f.      Smoking jokes as part of day to day life, as told by great national icons, "If I cannot smoke cigars in heaven, I shall not go", Mark Twain,[47]

g.      Hollywood actors and directors using smoking scenes to define "cool",[48]

h.      Soldiers smoking as a way to handle fear, uncertainty and stress,[49]

i.      Office workers and factory workers huddled outside buildings, even in the dead of winter, smoking, with dual objectives, first, to enjoy a cigarette, and second, to bond with one another and to enjoy gossiping about such topics as habits of co-

---

[42] *Tobacco*. <u>The New Encyclopedia Britannica</u>. Encycolpedia Brittanica, Inc., Chicago, 15th Ed., 2010, p. 167.

[43] Gately, Iain. *Tobacco: A Cultural History of How an Exotic Plant Seduced Civilization*. Simon & Schuster UK Ltd., London, England. 2001, p. 167 ("the tobacco serving as a confirmation of kinship").

[44] Tara Parker-Pope. *Cigarettes: Anatomy of an Industry from Seed to Smoke*. The New Press, New York, 2001, 6. ("[T]obacco built America").

[45] Joseph Fume, *A Paper- of Tobacco* Chapman and Hall, London. 1839, pp. 68-69

[46] William Faulkner, *Absalom, Absalom*, Chapter 4.

[47] K.M. Kuntz, Smoke. Todtri Productions Limited, New York. 1997, p. 58.

[48] *The Lady Vanishes* (MGM 1938).  Near the end of the movie Alfred Hitchcock has a cameo appearance at a train station wearing a black coat and smoking a cigarette).  See also, *Casablanca* (Warner Brothers 1942), Humphrey Bogart – throughout.

[49] Richard Klein, *Cigarettes Are Sublime*, Duke University Press, Durham and London. 1993, pp. 20-21.

workers and the conduct and attitudes of their bosses[50], as well as politics, and culture.

j.     Gentlemen lighting cigarettes for ladies as a way "to break the ice",[51] (including yuppies lighting cigarettes for one another at "Parties in the Park" during pleasant summer evenings in the City's Shaw Park).

k.     In the labor union context negotiation over the right to smoke, and/or making available convenient locations for smoking,[52]

l.     Youths smoking as a means of expressing rebellion, particularly because of a current perceived upper class disdain for the habit, with youthful rebellion rooted in American history – e.g., the more current Missouri Governor Jeremiah W. (Jay) Nixon advertises to youth that they should not smoke, the more they wish to smoke as a way to show their disdain for authority, [53]

m.     Late 19th century American plutocrats using $100 bills to light their cigars as a way to flaunt their wealth, and thereby exercise their right of expression[54], and

---

[50] The Who, *Won't Get Fooled Again,* on *Who's Next* (Decca Records 1971) by Pete Townshend, "Meet the new boss - Same as the old boss".

[51] "The gentleman will first and without fail ignite the lady's cigarette" shelovesny.com/etiquette.smoking.

[52] Stanton Glantz, *The Cigarette Papers*. University of California Press, California. 1996, pp. 419-410.

[53] Parker-Pope, 18 ("So while the government health warnings and growing antitobacco sentiments certainly scared many smokers off the habit, those very prohibitions also served to solidify many smokers' loyalties, partly because the more smoking was vilified, the more rebellious and appealing it seemed").

[54] http://hunch.com/ways-to-light-a-cigar/hundred-dollar-bill/1352973/   ("Fatcats, robber barons and Tammany Hall politicians traditionally light their cigars using $100 bills. Whether the economy is going up in smoke, or it's another Gilded Age, cigar lighting using wads of cash never loses its particular blend of arrogance, obnoxiousness and don't-you-know-who-I-am-ism.")

n.    Debutantes marching up Fifth Avenue in New York's 1929 Easter Parade while smoking and waiving their cigarettes, proclaiming them "torches of liberty", while actually expressing a yearning for independence and equality at a time when women rarely smoked in public due to social stigma, and when they were, in fact, second class citizens by many measures. [55]

94.    Further, the court may take judicial notice that the public park – as a public forum – has a special place in American history and in both ancient and modern traditions:

a.    Families gathering in parks, over the centuries to picnic, barbecue and smoke; (smoking outdoors is as American as apple pie and ice cream),

b.    Hippies gathering in parks to smoke and protest the Vietnam war (particularly, by smoking as an expressive act of political protest), and

c.    Citizens taking temporary refuge in parks from the demands of city life and work; (smoking is relaxation on a "break").

95.    The liberty interest at stake is the right to smoke, as an expression of physical freedom, self-determination, self-fulfillment, and expression.

96.    Those liberty interests are stronger in an outdoor public park setting than in other public forums because parks are traditionally and historically a place for citizens to smoke.

---

[55] Parker-Pope at 85-86. (Edward Bernays, a tobacco public relations guru, arranged for the debutantes to march in the parade).

97.     According to (a) the World Health Organization, (b) the Center for Disease Control, and (c) the American Heart Association, approximately 20+% of adults in the United States smoke.[56]

98.     The ban affects a vast swath of society – approximately one in five adults.

99.     Courts are reluctant to expand the doctrine of substantive due process, "because guideposts for responsible decisionmaking in this unchartered area are scarce and open ended".[57]

100.    For the Ordinance to pass muster it must serve a compelling state interest and be narrowly tailored.[58]

101.    While the ban allegedly serves the compelling state interest of health of adjacent smokers, the ban is insufficiently narrowly tailored to pass the substantive due process test because it uniformly bans citizens from engaging in the ancient and modern cultural tradition of smoking, all without exception.

102.    In the outdoor context, the alleged state interest in protecting the health of adjacent smokers cannot overcome the liberty interest of the smokers to engage in the ancient and modern cultural tradition of smoking.

---

[56] *Implementing Smoke-free Environments*, WHO Report On The Global Tobacco Epidemic, 2009, at Appendix III, 4, http://www.who.int/tobacco/mpower/ mpower_report_prevalence_data_2008.pdf, Center for Disease Control statistics at http://www.cdc.gov/mmwr/preview/mmwrhtml/mm5844a2.htm, and the American Heart Association statistics at http://www.americanheart.org/presenter.jhtml?identifier=4559.

[57] *Chavez*, 538 U.S. at 775 (citing *Collins*, *infra*, at 125 (1992)).

[58] "Where a fundamental liberty interest protected by the substantive due process component of the Fourteenth Amendment is involved, the government cannot infringe on that right 'unless the infringement is narrowly tailored to serve a compelling state interest'." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997).

103.   The portions of the Ordinance which ban outdoor smoking thus fail on substantive due process grounds, and should be declared invalid under the Fourteenth Amendment of the United States Constitution.

## COUNT III
## EQUAL PROTECTION –INTERMEDIATE SCRUTINY

104.   Plaintiff incorporates all prior paragraphs.

105.   Plaintiff asserts the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment because it classifies smokers as second class citizens when on outdoor, communal, city-owned property, and hence does not pass intermediate scrutiny.

106.   A law may treat groups differently, but a law may not treat similarly situated persons differently unless such differentiation is adequately justified.[59]

107.   If adverse impact on a disfavored class is the aim of the legislature, its impartiality becomes suspect under the Equal Protection Clause.[60]

108.   Plaintiff concedes that smokers are not a suspect class analogous to race, gender, national origin, etc.

109.   Plaintiff asserts that smokers are a quasi-suspect class because:

a.   A classification is suspect where it targets a group that has been subject to a history of discrimination and that is defined by a "characteristic" that "frequently bears no relation to ability to perform or contribute to society,"[61] – which is the stigma smokers face, and

---

[59] *Creason v. City of Washington*, 435 F.3d 820, 823 (8th Cir. 2006) (citing *Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir.1998)).
[60] *Railroad Retirement Bd. v. Fritz*, 449 US 166, 181 (1980).
[61] *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440-41 (1985).

b.      Smokers are currently subject to such discrimination.[62]

110.   This discrimination and animus compels an intermediate level of scrutiny when reviewed by the Court.[63]

111.   To survive intermediate scrutiny review, the Ordinance must advance important governmental interests unrelated to the suppression of civil rights and not burden substantially more civil rights than necessary to further those interests.[64]

112.   Just because legislators don't like something does not mean that they can ban it. "Equal protection of the laws is not achieved through indiscriminate imposition of inequalities."[65]

113.   Moral disapproval is insufficient – there must be harm present.[66]

114.   Even if the Ordinance does not discriminate against smokers on its face – which it does – it indisputably was designed to strip smokers of their right to smoke in the park and has the purpose and effect of creating disparate treatment of smokers.

115.   Plaintiff concedes that government has an interest in public health and safety.

116.   Plaintiff concedes long term smoking is bad for health.

---

[62] *See* Dirt Cheap, http://www.dirtcheapfunfun.com/dirtcheap/cigarettes.jsp (last visited Dec. 23, 2010) ("Dirt Cheap is truly the last refuge of the *persecuted* smoker").

[63] *See, e.g., Giordano, supra,* 588 F.Supp. at 314-15; *Lurz v. Adams,* 2008 WL 435125, at 1 (C.D.Ill. 2008). A relevant line of cases applies intermediate scrutiny equal protection analysis and denies relief, but each is distinguishable because (1) the smoking is *indoors* on government property, and/or (2) the Plaintiffs were all prisoners or psychiatric patients who require active supervision by government employees.

[64] *Holder v. Humanitarian Law Project*, 130 S.Ct. 2705, 2723 (2010).

[65] *Sweatt v. Painter*, 339 U.S. 629, 635 (1950) (quoting *Shelley v. Kraemer*, 334 U.S. 1, 22 (1948)). *See also Romer, supra,* 517 U.S. at 631.

[66] *Lawrence*, at 582 ("[m]oral disapproval ... like a bare desire to harm the group, is an interest that is insufficient to satisfy [even rational basis review]").

117.   The balancing of individual liberty interests against interests of public health, in this case, however, favors liberty because the ban does not advance the public health interests since outdoor exposure to secondhand smoke is de minimus, and hence, the ban overly burdens the civil rights of citizens to enjoy their liberty, bodily integrity, individual autonomy, and pursuit of happiness.

118.   The portions of the Ordinance which ban outdoor smoking thus fail to provide equal protection to the quasi-suspect class of smokers under intermediate scrutiny review on substantive due process grounds, and so must be declared invalid under the Fourteenth Amendment of the United States Constitution.

**COUNT IV**
**IN THE ALTERNATIVE**
**ANIMUS TO SMOKERS IS NOT A LAWFUL RATIONAL BASIS,**

119.   Plaintiff incorporates all prior paragraphs.

120.   In the alternative, the true rationale for the Ordinance is animus towards smokers, not health concerns for outdoor air quality.

121.   Anti-smoking sentiment is a current fad in American society.

122.   Animus alone is not a rational basis for government regulation.[67]  Particularly, if the Ordinance's "sheer breadth is so discontinuous with the reasons offered for it that [it] seems inexplicable by anything but animus toward the class that it affects; it lacks a rational relationship to legitimate state interests."[68]

---

[67] *Romer,* 517 U.S. at 631.
[68] *Romer,* 517 U.S. at 631.

123.   This court can determine whether animus and not rationality is the basis for the Ordinance. The court is not creating a new "suspect class" but rather determining that the Ordinance fails under rational basis review. [69]

124.   Plaintiff asserts the Ordinance's sole purpose derives from animus against smokers, not the alleged dangers of outdoor secondhand smoke.

125.   This supposition is proved by the lack of attention to outdoors smoking in the scientific studies cited in the Ordinance.

126.   The portions of the Ordinance which ban outdoor smoking thus lack any rational basis pursuant to substantive due process analysis, and so must be declared invalid under the Fourteenth Amendment of the United States Constitution.

**COUNT V**
**IMPROPER DELEGATION OF AUTHORITY**

127.   Plaintiff incorporates all prior paragraphs.

128.   There are no standards whatsoever in the Ordinance's delegation of authority to the City Manager to establish how the City Manager is to determine whether to ban smoking at any particular festival or event.

129.   A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. [70]

---

[69] *Romer,* 517 U.S. at 631, (animus to gays only basis for unconstitutional Colorado amendment); *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432 (1985) (animus against the mentally retarded only basis for unconstitutional zoning ordinance); *Plyler v. Doe,* 457 U.S. 202 (1982) (no state interest in denying public school education to children of illegal immigrants). *Cf. Green Party of Arkansas v Daniels,* 445 F. Supp. 2d 1056 (E.D. Ark. 2006) (under rational basis review with bite, no legitimate state purpose for applying different standards of ballot access to third parties).

130.   Due process requires that a State provide meaningful standards to guide the application of its laws.  A state law that lacks such standards is void for vagueness.[70]

131.   The portions of the Ordinance which allow the City manager to ban outdoor smoking at festivals, etc, lack standards and are void for vagueness, and should therefore be declared invalid under the Fourteenth Amendment of the United States Constitution.

## COUNT VI
## STATE LAW – DUE PROCESS

132.   Plaintiff incorporates all prior paragraphs.

133.   The Missouri Constitution, Art I, § 2, guarantees the citizens of Missouri "liberty" and "the pursuit of happiness".  It states, in full:

> That all constitutional government is intended to promote the general welfare of the people; that all persons have a natural right to life, liberty, the pursuit of happiness and the enjoyment of the gains of their own industry; that all persons are created equal and are entitled to equal rights and opportunity under the law; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails in its chief design.

134.   At Missouri law, "[s]ubstantive Due Process principles require invalidation of a substantive rule of law if it impinges on liberty interests that are so fundamental that a state may not interfere with them, even with adequate procedural due process, unless the infringement is narrowly tailored to serve a compelling state interest; in such cases, the laws are invalid regardless of the fairness of the procedures used to implement them." [72]

135.   To be considered a "fundamental" right protected by substantive due process, a right or liberty must be one that is "objectively, deeply rooted in the nation's history and tradition

---

[70] *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

[71] *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 44 (1991), O'Connor, dissenting, citing *Kolender v. Lawson,* 461 U.S. 352, 358 (1983).

[72] *Doe v. Phillips*, 194 S.W.3d 833, 843 (Mo. 2006), relying in part on *Doe v. Miller,* 405 F.3d 700, 709 (8th Cir.2005), quoting *Reno v. Flores,* 507 U.S. 292, 302 (1993); U.S. Const. amend. XIV.

and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."[73]

136.   State law principles of due process, as they apply to the issues raised in this complaint, will generally track federal law.

137.   The Missouri Constitution includes the phrase "pursuit of happiness", which is lacking from the United States Constitution (although part of the Declaration of Independence).

138.   The phrase "pursuit of happiness" in the Missouri Constitution must be given meaning.[74]

139.   An individual "pursues happiness" by engaging in such acts as smoking.

140.   The Missouri Constitution thus should be read to guarantee greater liberty for individual lifestyles, including smoking, than does the United States Constitution.[75]

141.   In the case of outdoor smoking the phrase "pursuit of happiness" adjusts the balancing test in Missouri in favor of the individual and against the City.

142.   This adjustment is not absolute, because "The individual must sacrifice a part of his particular interest if the sacrifice is a necessary one in order that organized society as a whole shall be benefited.  The restraint of personal action is justified when it obviously tends to the protection of the health and comfort of the community, and the individual's constitutional right is not thereby violated."[76]

---

[73] *Doe,* 194 S.W.3d at 843, relying on *State ex rel. Nixon v. Powell,* 167 S.W.3d 702, 705 (Mo. banc 2005).

[74] "Perhaps the most happy, comprehensive, generally quoted, and universally accepted summing up of those rules is by Judge Story to the effect that each word, unless qualified by the context, is to be expounded in its plain, obvious, and common-sense meaning.  *State v. Chicago, B. & Q.R. Co.*, 143 S.W. 785, 828 (Mo. 1912).

[75] Plaintiffs acknowledge that they have no case law to support this conclusion.

[76] *State ex rel. Lipps v. City of Cape Girardeau*, 507 S.W.2d 376, 381 (Mo. 1974).

143. The restraint on personal action in the outdoor smoking ban, however, does not "obviously tend[] to the protection of the health and comfort of the community", and so the ban fails Article I, § 2 of the Missouri Constitution.

144. The challenged language thus impinges on smokers' rights to liberty and the pursuit of happiness as those rights are guaranteed under Article I, § 2 of the Missouri Constitution, and so this court should find that the Missouri Supreme Court would declare them unconstitutional under the Missouri Constitution, and so declare them invalid.

_____

## NOMINAL DAMAGES

145. Plaintiff incorporates all prior paragraphs.

146. Plaintiff is being damaged in the nominal amount of $100.00 by the deprivations of his federal and state constitutional rights as outlined herein.[77]

## PRELIMINARY INJUNCTION

147. Violations of constitutional rights are deemed irreparable harm for purposes of injunctive relief.[78]

148. The ordinance:

    a.    Creates irreparable harm to the Plaintiff because of the violation of his constitutional rights,

    b.    The balance between Plaintiff's harm and the injury that granting the injunction will inflict on other parties litigant is in favor of Plaintiff, because there is no

---

[77]*Carey v. Piphus,* 435 U.S. 247, 266-267 (1978).
[78]*Elrod v. Burns,* 427 U.S. 347, 373 (1976), *Planned Parenthood of Minn., Inc. v. Citizens for Community Action,* 558 F.2d 861, 867 (8th Cir.1977)

health hazard from outdoor second hand smoke, and the alleged health hazard is the stated rationale for the ordinance, and all other reasons are unlawful,

c.  Plaintiff is likely to succeed on the merits,

d.  The public interest supports upholding the constitutional rights of the citizens[79].

149.  Plaintiff has no adequate remedy at law, because his injuries cannot be fully compensated through an award of damages.[80]

### PRELIMINARY INJUNCTION BOND - $100 WOULD BE PROPER

150.  Should this court hold a separate hearing on a preliminary injunction and grant relief, a nominal bond of $100.00 would be "proper" under Fed.R.Civ.P. 65(c).

### PRAYER

WHEREFORE, Plaintiff prays the Court to:

151.  Through preliminary and permanent orders, pursuant to 42 U.S.C. 1983 declare invalid the challenged language of City of Clayton Ordinance No. 6118, as shown bold and capitalized:

a.  "The possession of lighted or heated smoking materials in any form, including, but not limited to the possession of lighted or heated cigarettes, cigars, pipes or other tobacco products, is prohibited in or on any property or premises owned or leased for use by the City of Clayton, including buildings, **GROUNDS, PARKS, PLAYGROUNDS,** sports arenas and facilities, **PLAYING FIELDS, PARKING LOTS AND PARKING STRUCTURES**", and

---

[79] *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)
[80] *Gen. Motors Corp. v. Harry Brown's, LLC,* 563 F.3d 312, 318 (8th Cir.2009)

      **b.**     **"THE CITY MANAGER MAY… ORDER THAT THE SMOKING PROHIBITION BE EXTENDED TO STREETS, ALLEYS, SIDEWALKS, AND OTHER PUBLIC WAYS WHERE COMMUNITY EVENTS, FAIRS, FESTIVALS, NEIGHBORHOOD EVENTS AND SIMILAR PUBLIC GATHERINGS ARE BEING HELD DURING THE PERIOD OF SUCH EVENTS".**

152.    In the alternative, and pursuant to 42 U.S.C. 1983, issue preliminary and permanent injunctions to enjoin the City of Clayton and each of the other Defendants from enforcing the challenged language.

153.    Award Plaintiff nominal damages of $100.00.

154.    Award attorney's fees and costs under 42 U.S.C. 1988, and

155.    Award such other relief as the court finds to be just and reasonable.

Respectfully Submitted,

Attorneys for Plaintiff

  /s/ W. Bevis Schock  .
W. Bevis Schock, 32551MO
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:   314-721-1698
Voice: 314-726-2322

  /s/  Hugh A. Eastwood  .
Hugh A. Eastwood, 62058MO
7777 Bonhomme Ave., Ste. 1603
St. Louis, Missouri 63105
heastwood@eastwoodlawstl.com
Fax:   (314) 727 4473
Vox:   (314) 809 2343